UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
|     Richard Crespo, | : | Case No. 15-22043 (AMN) |
|     *Debtor* | : | |
| | : | |
| | : | |
| Boardwalk Realty Associates, LLC, | : | |
|     *Applicant* | : | |
| | : | |
| v. | : | |
| Richard Crespo, | : | |
|     *Respondent* | : | |
| | : | Re: ECF No. 32 |

**RULING AND MEMORANDUM OF DECISION
ALLOWING REDUCED FEES AND ALLOWING
REIMBURSEMENT OF EXPENSES TO BOARDWALK REALTY ASSOCIATES, LLC**

Before the court is Boardwalk Realty Associates, LLC's ("Boardwalk") application

pursuant to 11 U.S.C. §§ 543 and 503(b)(3)(E) for allowance of receivership fees and

reimbursement of expenses relating to Boardwalk's prepetition work as a state court-

appointed receiver of rents for property owned by the Debtor, Richard Crespo

("Crespo").  For the reasons that follow, the court finds that a portion of the amount

sought should be allowed.

I.  JURISDICTION, VENUE, AND STANDING

This court has jurisdiction over the motion for turnover and the application for

fees and expenses pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the District Court's

order of referral of bankruptcy matters dated September 21, 1984.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), as it pertains directly to the

administration of the estate.  Venue is proper in this District pursuant to 28 U.S.C. §

1408.  Boardwalk has standing to seek allowance of compensation and reimbursement of costs pursuant to 11 U.S.C. § 543.

II.  FACTS AND PROCEDURAL HISTORY

Richard Crespo filed a voluntary chapter 13 bankruptcy petition on November 26, 2015 (the "Petition Date").  The deadline for filing proofs of prepetition claims was March 21, 2016 (the "POC Deadline").  On April 8, 2016, Crespo moved for turnover of property of the estate held by Boardwalk (the "Funds") and an accounting (the "Turnover Motion").  ECF No. 27.  On April 19, 2016, Boardwalk filed a response to the Turnover Motion stating that: (1) it was not a creditor and therefore was not bound by the then-passed POC Deadline; and (2) Boardwalk should not be required to turn over the Funds to the Debtor because it was entitled to a fee for its prepetition work which equaled or exceeded the Funds for its receivership work for Crespo's properties from March 27, 2014 to November 25, 2015 (the "Receivership Period").  ECF No. 29. Boardwalk also filed an application pursuant to 11 U.S.C. § 543 seeking allowance of compensation (the "543 Application") in the amount of $4,784.00 and reimbursement of costs in the amount of $600.00 related to its services as receiver during the Receivership Period.  ECF No. 32.

Following a hearing, the court granted the Turnover Motion, ordered Boardwalk to turn over the Funds to Crespo, ordered Crespo to place the Funds in an escrow account pending further order of the court, and scheduled an evidentiary hearing on the 543 Application.  ECF No. 41.  Boardwalk filed a notice of its compliance with the turnover portion of the order on May 18, 2016.  ECF No. 42; *see also* ECF No. 44.

The parties filed pre-hearing briefs, proposed findings of fact, proposed conclusions of law, and lists of witnesses and exhibits.  ECF Nos. 45, 46, 47, 48, 49, 50, 51, 52.  Two central issues arose from these filings: (1) whether Boardwalk, as custodian of the Funds, was entitled to payment either as an administrative expense pursuant to 11 U.S.C. § 503(b)(3)(E) or as an unsecured, prepetition creditor (had it timely filed a proof of claim); and, (2) whether Boardwalk's requested fee was reasonable given any benefit to the estate from Boardwalk's work as a state-court appointed receiver pursuant to 11 U.S.C. § 543.

In order to resolve these issues, the court summarizes the testimony presented during the evidentiary hearing and the parties' arguments, reviews the applicable law, and resolves classification of the receivership fees, Boardwalk's entitlement to fees and costs for money paid directly to MDC by the co-owner, and determines whether the requested fees and costs are reasonable.

1.  Hearing Testimony

Craig Yelin, the principal of Boardwalk, testified that Boardwalk had extensive experience as a receiver of rents appointed by the judges of the Superior Court.  ECF No. 56, 00:10:00–00:12:00.[1]  He testified Boardwalk had been appointed receiver of rents to collect payment due to the Metropolitan District (the "MDC") for Crespo's property, known as 1945–1949 Broad Street, Hartford, Connecticut (the "Property"), in a case captioned *The Metropolitan District v. Crespo* pending in the Superior Court, Judicial District of Hartford, Docket No.CV-14-6049124-S.  ECF No. 56, 00:15:00.  Yelin

---

[1]   All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly available at the referenced ECF No. as played on VLC Media Player.

testified at length that the judges of the Superior Court regularly placed a significant degree of trust in him.  ECF No. 56, 01:40:00–01:56:00.

Yelin testified that as a receiver, his task was typically to collect rent owed by tenants in lieu of their landlord. ECF No. 56, 00:30:00.  He then typically – and in the case of the Property here – forwarded that money to the MDC.  He testified that rent for the Property was difficult to collect due to the nature and conduct of the tenants and due to unspecified interference from the owners.  ECF No. 56, 00:22:50–00:28:00.  Yelin noted the Property here is jointly owned by Nancy Maldonado and by Crespo, who was incarcerated during the majority of the Receivership Period.  ECF No. 56, 00:26:00.

According to Yelin, Maldonado was unable to provide basic information about the Property to assist with the administration of the receivership, such as the identity of the tenants, the terms of the tenancies, and whether written leases existed.  Maldonado also attempted to undermine the receivership by making payments directly to MDC – rather than through Boardwalk – as required by the Superior Court order and Conn. Gen. Stat. § 16-262t (e), and she eventually disappeared.  ECF No. 56, 00:26:00; 01:40:45.  Yelin testified Boardwalk was never able to collect from a barber shop on the ground floor because the owner would only pay the landlord.  ECF No. 56, 00:53:00.  A package store, also located on the ground floor, changed ownership several times and Yelin was never certain who the proprietor was.  ECF No. 56, 00:55:00.

Based on Yelin's testimony, Boardwalk's record keeping is devoid of accountability.  Yelin testified that he, or Boardwalk's employee, Ina Babiyev, would ask the tenants of the Property what their rent was, collect the rent, and then prepare and deliver a receipt to the tenant.  ECF No. 56, 00:25:30, 00:56:00.  Boardwalk did not

4

keep any record or log of the receipts.  Yelin testified that typically and in this case, no

records were kept of the identity of the payor, the method of payment (*i.e.,* cash, money

order, check), the date of receipt of a particular rent payment or the date Boardwalk

deposited the rent payment in its bank account.  ECF No. 56, 00:56:00–00:59:00.  The

only paper trail or audit trail would be by reference to the receipts issued to tenants,

should the tenants have occasion to provide them to a court for some reason.  ECF No.

56, 58:00.  Based on Yelin's testimony, Boardwalk record keeping procedures included

in this case – and typically – only a running Excel spreadsheet[2] maintained by Yelin with

which to respond to a landlord's or a court's request for information regarding the

identify of a payor, the manner of payment, the date of payment, the date the rent

money was deposited in Boardwalk's bank account, or the date the payment was turned

over to the MDC.  According to Yelin, no actual records – other than the Excel

spreadsheet edited by Yelin – exist.

Yelin testified he would send a weekly check to each MDC attorney for all

amounts collected that week for all receivership accounts managed by that attorney.

59:30–01:01:01.  If Babiyev was collecting, as was the case for the Property here, she

would leave the money in a drawer in Boardwalk's office and tell Yelin she had done so

via a written tally, text, email, or phone call.  ECF No. 56, 00:56:00, 01:38:00, 10:56:00,

2:18:30 (Babiyev testimony).  If she did write down how much she collected and from

whom, Yelin would not retain a copy of this information.  ECF No. 56, 00:56:00–

00:59:00.  Yelin did not make copies of checks or money orders before depositing them.

---

[2]      Yelin testified that Boardwalk does not maintain historical copies of the spreadsheet or any log of
payment activity.  So, there is no way to verify the information in the final version presented by Boardwalk to the
court by referring to the underlying payment records.

ECF No. 56, 02:00:00.  Yelin did not keep track of cash received other than through a single Excel document.  ECF No. 56, 02:00:00.

Yelin would record the name of the tenant and the amount received in a spreadsheet, which would automatically deduct Boardwalk's commission.  ECF No. 56, 00:49:00, 00:58:00, 00:59:25.  Yelin would update the spreadsheet whenever a new tenant moved in by overwriting the old tenant's name, and would not keep any record of the prior tenant.  ECF No. 56, 00:58:00.  Yelin testified that Boardwalk does not maintain historical records regarding payments.  Instead, Yelin edits the master spreadsheet continuously so there is only, ever, one version of the spreadsheet record. ECF No. 56, 00:58:00.

Yelin testified that Boardwalk's commission for all receiverships is 21.9%, which Yelin calculated based on the cost to run his business, and the average amount of time he and Babiyev spend on the average receivership.  ECF No. 56, 01:01:00–01:05:00; 1:09:00–1:10:00.  He testified that this average represents approximately 4 hours of work per month, but in this case the time spent approached 8-10 hours per month.  ECF No. 56, 01:07:45; 01:09:45.  Boardwalk does not keep time records and Yelin did not provide any other justification for his estimation of the hours actually spent or how they might relate to his overhead calculation.  ECF No. 56, 01:05:00.  Yelin did claim that other receivers charged as much as 35-40%, without providing any evidence aside from his own testimony.  ECF No. 56, 01:44:54.  Yelin emphasized several times that the Superior Court judges are very happy with Boardwalk's work as receiver, and stated that Boardwalk was always awarded the 21.9% it seeks for its work.  ECF No. 56, 01:05:00.

6

When questioned regarding how he would identify where the money came from and how much he had received, Yelin referenced the receipts he gave to the tenants, his and Babiyev's memories, and the supposed reliance and trust placed in him by the Superior Court judges. ECF No. 56, 00:56:00–01:00:00; 01:40:00–01:46:00. Yelin stated he does not keep copies of the receipts issued by Boardwalk; there is no log or register of receipts issued. ECF No. 56, 01:57:30–02:02:00. Bizarrely, he also testified that preparing records was the most important part of his job, that fifty percent of his time was spent doing bookkeeping and that deceit was the standard in his business. ECF No. 56, 00:41:10, 01:40:00, 02:02:45. Yelin also testified on cross-examination after being shown confirmation that notice of the bankruptcy was mailed to him on December 2, 2015, that he did believe he had received the notice. ECF No. 56, 1:46:30; Crespo Exhibit 102.

Ina Babiyev, an employee of Boardwalk, testified concerning the difficulties in collecting rent at the Property, and concerning the methodology for collecting. ECF No. 56, 2:08:16. She would collect cash, checks, and money orders, secure them by placing them in a drawer at the office, and notify Yelin that they were there by phone or text message. ECF No. 56, 2:18:30. She testified – in contradiction to Yelin's testimony that Boardwalk was never paid by the barbershop – that she eventually was able to collect some rent from the barbershop. ECF No. 56, 2:13:45. No payments from the barbershop are listed on the copy of the Excel spreadsheet entered into evidence. Boardwalk's Exhibit 3.

Finally, Crespo testified that he had at one point owned the package store, but had sold it in September of 2011. ECF No. 56, 2:22:00.

7

2.  Hearing Oral Argument

Following the evidentiary hearing, the court heard oral argument.  Boardwalk's attorney asserted that the court's expressed reservations about Boardwalk's bookkeeping practices were a red-herring because no party had contested the amounts actually collected.  He maintained that Boardwalk had provided a benefit to the estate by paying down the MDC bill, and that the court should find that fair compensation would be 21.9% of the amount collected.

Crespo's attorney argued that Boardwalk needed to file a proof of claim as an unsecured creditor, rather than receiving payment as a custodian pursuant to 11 U.S.C. § 503(b)(3)(E).

The court also raised the issue of whether Boardwalk was entitled to payment for the money that Maldonado had paid directly to MDC.  Boardwalk argued that it was entitled to payment pursuant to Conn. Gen. Stat. § 16-262t.  Following the conclusion of oral argument, the court took the matter under advisement.

III.  APPLICABLE LAW

1.  Connecticut General Statutes § 16-262t

Connecticut General Statutes § 16-262t provides that upon default of the owner of property on bills due, a water company or municipal water service may petition the Superior Court for appointment of a receiver of rents.  Conn. Gen. Stat. § 16-262t (a)(1).  Following appointment by the Superior Court, the receiver shall collect all rents or payments for use and occupancy or common expenses.  Conn. Gen. Stat. § 16-262t (a)(4).  The receiver then allocates the money in the following priority:  current utility bills due the petitioner; reasonable fees and costs determined by the court to be due the

receiver; reasonable attorney's fees and costs incurred by the petitioner; and any

arrearage found by the court to be due and owing the petitioner.  Conn. Gen. Stat. § 16-

262t (a) (5).  Any owner who interferes with the receivership may be found to be in

contempt of court following notice and a hearing.  Conn. Gen. Stat. § 16-262t (e).

    2.  Federal Law

"The standards governing [a] [r]eceiver's reimbursement are those applicable to

bankrupty custodians."  *S.E.C. v. Churchill Sec., Inc.*, 223 B.R. 415, 417 (S.D.N.Y.

1998).  The Bankruptcy Code defines a custodian in pertinent part as a "receiver or

trustee of any of the property of the debtor, appointed in a case or proceeding not under

this title . . . ."  11 U.S.C. § 101 (11) (A).  Turnover of property of the estate held by a

custodian is governed by 11 U.S.C. § 543, which provides in pertinent part:

> "(a) A custodian with knowledge of the commencement of a case under
> this title concerning the debtor may not make any disbursement from, or
> take any action in the administration of, property of the debtor . . .
> rents . . . of such property, or property of the estate, in the possession,
> custody, or control of such custodian, except such action as is necessary
> to preserve such property."

> "(b) A custodian shall –

>> "(1) deliver to the trustee any property of the debtor held by
>> or transferred to such custodian, or . . . rents . . . of such
>> property, that is in such custodian's possession, custody, or
>> control on the date that such custodian acquires knowledge
>> of the commencement of the case; and

>> "(2) file an accounting of any property of the debtor, or . . .
>> rents . . . of such property, that, at any time, came into the
>> possession, custody, or control of such custodian.

> "(c) The court, after notice and a hearing, shall –

>> . . .

"(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian . . . ."

11 U.S.C. § 543.

A custodian, including a receiver, "is entitled to a first priority bankruptcy preference for reasonable expenses incurred in working with the debtor." *In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1406 n.2 (9th Cir. 1992) (receiver appointed pursuant to S.E.C. motion prior to chapter 11 filing). Allowance of administrative expenses is governed by 11 U.S.C. § 503, which provides in pertinent part that administrative expenses include:

"(3) the actual, necessary expenses . . . incurred by—

. . .

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . ."

11 U.S.C. § 503.

Regarding determination of the "reasonable compensation" due to Boardwalk, Crespo initially cited to a Connecticut Supreme Court case from the 1950s involving a receivership:

"In the absence of a statute, there is no established rule of thumb for determining the amount of a receiver's fees. They must be fixed at an amount that will be reasonable and fair compensation for the services rendered. What is a reasonable amount is a question of fact. . . . The burden is upon the applicant to prove their worth. . . . Certain recognized

10

factors enter into the determination.  Consideration should be given to the nature, extent and value of the property administered. . . . .  The complications and difficulties encountered should be noted. . . .  The responsibilities involved, and assumed by the receiver, and the diligence and thoroughness which he displays are weighty elements. . . .  The knowledge, experience, labor and skill required of the receiver and devoted by him to the receivership must be taken into account."

*Jacobs v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 141 Conn. 86, 94–95, 103 A.2d 805 (1954) (citations omitted), cited in ECF No. 27.

Boardwalk criticized this case as dealing with a different statute[3] and being somewhat old, but then fails to cite any cases analyzing the question of reasonableness, instead citing to two more recent cases which also dealt with different receivership statutes, Conn. Gen. Stat. §§ 12–163a and 16-262f, and in which the question of reasonableness of fees was not addressed.  See *Canton v. Cadle Properties of Connecticut, Inc.*, 316 Conn. 851, 857, 114 A.3d 1191 (2015); *Connecticut Nat. Gas Corp. v. Miller*, 239 Conn. 313, 315, 684 A.2d 1173 (1996), cited in ECF No. 48.  In addition, Boardwalk neglects to discuss a number of more recent bankruptcy cases subsequently cited by Crespo, which allude to considerations similar to those articulated in the *Jacobs* case.[4]  Regardless, both parties agree that the court has the discretion to determine the reasonableness of fees.  See ECF No. 48, 46.

A number of more recent bankruptcy court decisions aptly describe the pertinent law:

---

[3]      No statutory basis for the receivership is cited in *Jacobs v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 141 Conn. 86, 86, 103 A.2d 805 (1954), but the case involved collection of damages caused by a catastrophic circus fire, so the application of § 16-262t, for water receiverships, was not an issue.

[4]      *See In re: Acme Heating & Air Conditioning Supply, Inc.*, 20 B.R. 129, 131 (Bankr. D. R.I. 1982); *In re Gomes*, 19 B.R. 9, 11 (Bankr. D. R.I. 1982); *In re Marichal-Agosto, Inc.*, 12 B.R. 891, 893 (Bankr. S.D. N.Y. 1981); *In re Cowell/McCormack Joint Venture*, 36 B.R. 652 (Bankr. D. Haw. 1984); *Matter of North Port Development Co.*, 36 B.R. 19, 21, (Bankr. E.D. Mo. 1983); *In re Gomes*, 19 B.R. 9, 11 (Bankr. D. R.I. 1982); *Matter of Left Guard of Madison, Inc.*, 11 B.R. 238 (Bankr. W.D. Wis. 1981).

"Receivers are compensated pursuant to § 543(c). . . .  If allowed, the Receiver's fees and expenses are entitled to be treated as an administrative expense pursuant to § 503(b)(3)(E). It is clear from the statute that Receivers who are excused from service by the Bankruptcy Court are entitled to fees for pre-petition services. . . .  The only standard provided by § 543(c)(2) is reasonableness. The determination of what is reasonable is a determination of federal, not state, law. . . .  The factors for determining reasonableness are similar to those used in considering other attorneys' fees and include: the time and labor expended by the custodian; the benefit of the custodian's services to the debtor and the estate; the size and/or complexity of the estate; what the custodian would have received if he or she had been appointed as trustee for the debtor, and the quality of the custodian's services. . . .  The Receiver may file a claim for his fees pursuant to § 503(b)(3)(E) and Debtor will have the opportunity to object."

*In re Forde*, 507 B.R. 509, 521 (Bankr. S.D.N.Y. 2014) (internal citations omitted).

*See also, In re 29 Brooklyn Ave., LLC*, 548 B.R. 642, 645 (Bankr. E.D.N.Y. 2016)

(tracing entitlement of pre-petition state court receiver to administrative priority to

*Randolph & Randolph v. Scruggs*, 190 U.S. 533, [538–39] (1903)); *In re Snergy*

*Properties, Inc.*, 130 B.R. 700, 703 (Bankr. S.D.N.Y. 1991) (state court mortgage

foreclosure receiver is a custodian entitled to compensation as an administrative

expense in bankruptcy); *see also*, 11 U.S.C. § 330 (3) (nonexclusive list of factors for

determining reasonable compensation); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542,

558 (2010) (reasonableness of attorney's fees committed to sound discretion of trial

judge).  Other courts have ruled that "the custodian's services must provide a benefit to

the estate to be entitled to administrative expense priority."  *In re 29 Brooklyn Ave., LLC*,

at 645, citing *Szwak v. Earwood* (*In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.*),

592 F.3d 664, 674 (5th Cir. 2009) and cases cited therein.

IV. DISCUSSION

1.  Classification of Reasonable Fees and Costs

After analysis of the statutory scheme and case law the court concludes that a receiver is entitled to collect fees as an administrative expense, provided the receiver's prepetition services provided a benefit to the estate.  The specific provisions of 11 U.S.C. § 503(b)(3)(E) control.  It is undisputed that here, Boardwalk did provide a benefit to the estate by decreasing the amount due to the MDC by approximately $15,260.60.[5]  *See* Exhibit 3.  Crespo claims that Boardwalk is not entitled to administrative priority because it did not turn over the Funds immediately upon learning of the bankruptcy, instead waiting to be compelled by court order.  Based on the court's analysis, the failure to turn over funds quickly is not an absolute bar to the collection of administrative expenses, but rather is a consideration for the court in its analysis of the reasonableness of Boardwalk's fees and costs.

2. Entitlement to Fees and Costs for Money Paid directly to MDC by Co-Owner

Boardwalk calculated its fee as a percentage of all payments to MDC, including those payments made directly by Maldonado.  Section 16-262f specifically provides that owners are not to pay the utility directly.  In fact, an owner of property subject to a receivership may be held in contempt of court for doing so.  This demonstrates a strong legislative intent for money to pass through the receiver.  Permitting the owner to bypass payment of attorney's fees and receiver's fees by paying the utility company

---

[5]      This amount is calculated based on Boardwalk's accounting, adding the lines entitled Judgment – Water, and Judgment – Additional Water Charges, therefore it should not be dispositive of any future questions regarding the amount owed by Crespo to the MDC.  See Boardwalk Exhibit 3.  The MDC may have subsequently subtracted its own attorney's fees, or the amount listed by Boardwalk may in some other way be inaccurate.

directly would incentivize the owner to ignore the receiver's authority and the statutory

scheme.  Moreover, the appointment of the receiver likely motivates the owner to pay

delinquent utility bills as quickly as possible.  Therefore, in calculating any

compensation paid to Boardwalk, the court will take into account the money paid directly

to MDC by Maldonado.

   3.  Determination of Reasonable Fees and Costs

   The parties agree that no reasonable fees and costs were determined by the

Superior Court, *see* Conn. Gen. Stat. 16-262t (a)(5); that it falls to this court to make

that determination; and, that it was Boardwalk's practice to deduct its fees from money

collected over the course of the receivership, and seek approval for such deductions

from the Superior Court after the arrearage was paid and the receivership terminated.

Here, the arrearage was never fully paid; the receivership terminated due to the

bankruptcy filing, therefore the question of reasonableness falls to this court.

   Yelin's claims that the Superior Court judges approve of Boardwalk's methods,

consider its fee reasonable, and trust Boardwalk and Yelin, are inadmissible hearsay.

Moreover, even if admissible, the opinions of Superior Court judges in unrelated matters

are not binding on this court.[6]

   The court recognizes that Boardwalk's task in collecting rent may be a difficult

one, but the court declines to adopt the blanket 21.9% fee calculation urged by

Boardwalk.  Boardwalk has failed to put in place any system which would provide the

integrity and accountability necessary to substantiate what was paid, when, how, or by

---

[6]It is unknown whether the Superior Court judges who allegedly find Boardwalk's 21.9% blanket fee to be reasonable have heard any testimony as to Boardwalk's accounting methods and practices, or lack thereof.

whom.  Basic practices such as keeping a list of who paid Boardwalk, when payment

was made, and in what form are not followed.  There are no time records kept.  Any

*bona fide* dispute as to payment by a tenant – whether raised by the tenant, Boardwalk,

the property owner, the MDC, or a court – will be incapable of anything other than

speculative adjudication because there is no discernable accounting methodology

followed by Boardwalk.  That any *bona fide* dispute resolution would be fruitless was

demonstrated at the evidentiary hearing when Yelin and Babiyev gave conflicting

testimony regarding whether the barber shop had eventually made rent payments.[7]

Boardwalk's records lack the consistency, transparency, and integrity expected

from a court-appointed receiver.  A court-appointed receiver has long been considered

a fiduciary, "bound to perform his delegated duties with the high degree of care

demanded of a trustee or other similar fiduciary."  *Crites, Inc., v. Prudential Ins. Co. of

Am.*, 322 U.S. 408, 414 (1944). "[A] receiver is a fiduciary, he undertakes to care for the

property and manage it for the creditors, to act with assiduity and with reasonable

competence."  *In re C.M. Piece Dyeing Co.*, 89 F.2d 37, 40 (2d Cir. 1937) (*Hand, C.J.*);

see also *Kraham v. Lippman*, 478 F.3d 502, 504 (2d Cir. 2007) (*Sotomayor,

C.J.)*(classifying receiver as fiduciary).  "The requirement to document his account and

his services in adequate detail and thus justify the commission he claims is his due is

his burden to satisfy . . . ."  *Gasser v. Infanti Int'l, Inc.*,  2011 WL 2183549, at *24

(E.D.N.Y. June 3, 2011).

---

[7]    The absence of reasonable accounting practices – when implementing basic accounting measures would be simple and would cost little – suggests Boardwalk prefers the inability to account for money received.

Yelin and Boardwalk's attorney claimed that the absence of a trustworthy accounting system was irrelevant to the court's consideration of the issue of the reasonableness of Boardwalk's demand for 21.9% of all payments to the MDC.  The court concludes, however, that accounting for the money it collects with reasonable specificity is an essential part of Boardwalk's fiduciary duty as a court-appointed receiver.  Yelin himself testified that half of his time is spent doing bookkeeping.  If Boardwalk does not take the time and make the effort to create a system whereby the court, a tenant, or a landlord can verify who paid what, and when, where the money deposited came from and how deposits compare to collections, it is not performing its court-appointed duty adequately.

In addition, the court concludes that a part of the receiver's job is to know that when a bankruptcy is filed, federal law – 11 U.S.C. § 543 – compels immediate turnover.  Yelin testified that bankruptcies occur in 15% of Boardwalk's receivership cases.  ECF No. 56, 01:53:00.  Yelin claimed that in prior cases an MDC attorney had handled the turnover procedures, and in this case an MDC attorney had chosen to do nothing.  ECF No. 56, 01:54:30.  Advice of counsel is not an excuse for failure to comply with a federal law that should be familiar to an experienced receiver such as Boardwalk.  Further, the MDC attorney was not Yelin's attorney or Boardwalk's attorney.  The court concludes that a reasonably competent receiver would know its duty to immediately turn over receivership collections to a trustee once a bankruptcy is filed.

Based on the foregoing, and taking into account the court's concerns about the lack of transparency created by Boardwalk's deliberate choice not to account specifically for time spent, and its deliberate choice to employ no reasonable accounting

practices, the court concludes that Boardwalk is entitled to a fee of 5%, rather than of 21.9%, of the total collected. "[T]he [court] should make as close an approximation as it can, bearing heavily if it chooses upon the [receiver], whose inexactitude is of his own making. . . . The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any. . . .  It is not fatal that the result will inevitably be speculative, many important decisions must be such." *Cohan v. Commissioner of Internal Revenue*, 39 F.2d 540, 544 (2d Cir.1930) (*Hand, C.J.*); see also *Gasser v. Infanti Int'l, Inc.*,  2011 WL 2183549, at *24 (E.D.N.Y. June 3, 2011) (quoting *Cohan*, awarding receiver $5,000 in fees on a *quantum meruit* basis after receiver requested $19,242.11 in fees on a percentage commission basis).  In the present proceeding, the total collected was $21,849.00,[8] therefore $1,092.45 in fees should be allowed.

Boardwalk also requested allowance of $600 in expenses, including marshal fees and professional services rendered by Boardwalk's attorney related to Boardwalk's eviction action against Broad Package Store.  ECF No. 56, 00:54:00, 1:20:00, Exhibit 4. As stated, a receiver is entitled to recover actual, necessary expenses under 11 U.S.C. § 503(b)(3); in addition, a receiver's attorney is entitled to collect fees from the estate for professional services rendered.  11 U.S.C. § 503 (b) (4).  .  Exhibit 4.  The court concludes that these expenses, $340 for the attorney's professional services and $260 for marshal fees, were reasonable.  Exhibit 4.  Therefore, the total allowance of fees and expenses is $1,692.45.

---

[8]This amount includes both the money that Maldonado paid directly to MDC and the Funds that Boardwalk retained.  ECF No. 56, 01:40:00; Boardwalk's Exhibit 3.

4. Entitlement to Attorney's Fees

Boardwalk's attorney also requested attorney's fees for his work post-petition regarding the Turnover Motion and the 543 Application, in the total amount of $5,362.50. ECF No. 68. The reasonableness of these fees is not before the court in the present decision.

VII. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that Crespo pay to Boardwalk $1,692.45 of the Funds on account of the allowed receiver's fee and costs; and it is further.

ORDERED, that Crespo shall hold the remaining $3,691.55 in a separate, interest bearing account, until further order of this court.

Dated on November 18, 2016, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut